**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cr. No. 2:21-cr-20219-SHL** |
| | ) | |
| **DAVID MOORE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through its counsel, Joseph C. Murphy, Jr., United States Attorney for the Western District of Tennessee, and the undersigned Assistant United States Attorney, Regina M. Thompson, and responds to the motion to suppress filed by the defendant, specifically numbered document 20 in the above-referenced case. The defendant's motion alleges that the search warrant issued to seize items from his home was invalid, and that the evidence obtained resulting from the search should be excluded. For the reasons that follow, the defendant's motion should be denied.

## FACTUAL BACKGROUND

On February 4, 2021, around 1:30 A.M., Memphis Police Department (hereinafter "MPD")

Officers Matthew Girouard,[1] Keeley Greer[2] responded to call from Takeitha Thomas at the corner of South Lauderdale Street and East McLemore Avenue in Memphis, Tennessee.   Immediately upon arriving, Officer Girouard commented on how he could see that Thomas had been assaulted due to a laceration on her nose.   Thomas alleged that her boyfriend, defendant David Moore, had just assaulted her.   She fled his home where she and her daughter had been staying located at 534 Lucy Avenue, Apartment Number 6, Memphis, Tennessee 38106.   Thomas said she was temporarily living with the defendant because he asked her to stay with him when he got out of jail one year prior.

On this particular night, she ran from the residence because the defendant was drunk and had just head butted her, causing the cut on her nose.   She hoped that by leaving the apartment the defendant would also leave and not harm her 8-year-old daughter who was asleep in the residence. Police asked if there were firearms in the house, and she replied that the defendant did have a gun but she did not know if it was still there.   She claimed that it was a "chopper" style rifle and that she had last seen it 5 days ago in his closet.   She further explained that the defendant was on an 8-year probation for aggravated assault.   Thomas refused medical treatment, and police called for backup before going to the defendant's apartment. Officers Anthony Henderson and Ryan Drew arrived shortly thereafter.

Once at the apartment, Greer and Girouard knocked on the front door because Thomas did not have a key, but no one answered.   Police realized that the defendant must have left the

---

[1] MPD Officer Matthew Girouard was wearing his body worn camera and had it activated. The government intends on proffering this footage at the suppression hearing.
[2] MPD Officer Keeley Greer was wearing his body worn camera and had it activated. The government intends on proffering this footage at the suppression hearing.

residence.   However, while police were at the apartment, they noticed a white sedan drive by twice with a passenger that matched the description of the defendant provided by Thomas. The car stopped down the street from the apartment complex, and the driver exited while the passenger remained inside.   Officers Drew and Henderson approached the vehicle to investigate.   Police noticed the driver who had exited the car was a female.   Henderson asked the driver if the passenger was in the car still and she said he was.   Police discovered that the defendant was the passenger, and he was subsequently arrested for domestic assault.   During a pat down of the defendant, Officer Drew found keys to the apartment.

Thomas then unlocked the apartment with the keys Officer Drew recovered. Officers Girouard and Drew went into the apartment with Thomas since she told them that her daughter and their belongings were still inside.   Thomas woke up her daughter and began to collect their property.   At one point, Thomas went into the master bedroom closet and retrieved her shoes. Officers Girouard and Drew remained in the apartment with Thomas while she collected her things, but the police did not open any doors inside the apartment or look through any compartments.   Police then locked the door once Thomas and her daughter had packed up and were ready to leave.   Officer Girouard eventually dropped Thomas and her daughter off at a shelter around 4:10 A.M.[3]

At 3:05 P.M. the same day, Detective Brandon Cockman swore to and obtained a search warrant[4] to look for "[f]irearms, [c]ocaine, [m]arijuana, and [c]urrency" at the defendant's apartment.   (Ex 1, at 2).   In the affidavit for the warrant, Cockman stated that Thomas had seen

---

[3]  After dropping off Thomas, Officer Girouard's body worn camera footage ends.
[4]  The warrant and its accompanying affidavit are tagged as Exhibit 1 to this response.

a "black and green (Copper) assault style rifle . . . a week ago in the bedroom closet of" the residence.  *Id.*  In addition, the affidavit also stated that Thomas told police "she has seen David Moore store cocaine in bedroom dresser drawers" in the apartment.  *Id.*  Finally, the warrant also stated the defendant "ha[d] a history of selling illegal narcotics according to his arrest history and the victim."  *Id.*  Once the warrant was executed, a black scale and 12 live 7.62x39 caliber rounds were found.  The scale was found on top of the T.V. in the den.  The ammunition was found in a dresser drawer located in the master bedroom.  The ammunition was next to mail addressed to the defendant in the drawer.

## ARGUMENT

The Fourth Amendment protects citizens from unreasonable and warrantless searches and seizures by the government. U.S. Const. amend. IV. A person "is entitled to be free from unreasonable governmental intrusion" wherever he or she has a "reasonable 'expectation of privacy.'"  *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967)).  The remedy for defendants who have had their Fourth Amendment Rights violated is to exclude all evidence obtained as a result of that violation.  *See Terry*, 392 U.S. at 12–13.  A search of one's home is per se unreasonable where police do not have a valid search warrant, unless the search falls into one of the "few exceptions."  *Kyllo v. United States*, 533 U.S. 27, 31 (2001).

Search warrants comply with the Fourth Amendment when they contain three things. *Dalia v. United States*, 441 U.S. 238, 255 (1979).  First, warrants must be issued by neutral, disinterested magistrates."  *Id.*  "Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular

apprehension or conviction for a particular offense.'"  *Id.* (citation omitted).   And third, "'warrants must particularly describe the things to be seized,' as well as the place to be searched." *Id.* (citation omitted).   "[T]he duty of a reviewing court is simply to ensure that the magistrate [who issued the warrant] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960).

A reviewing court may only look "to the information presented in the four corners of the affidavit" to determine whether probable cause existed.   *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (citing *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir.2005).   However, "[a] magistrate judge's determination of probable cause should be paid great deference by a reviewing court."   *Coffee*, 434 F.3d at 892 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.2000) (en banc)).  "[A]n issuing magistrate's discretion should only be reversed if it was arbitrarily exercised."   *Allen*, 211 F.3d at 973 (citing *United States v. Swihart*, 554 F.2d 264, 267-68 (6th Cir.1977)).

Because the search warrant for the defendant's apartment was issued by a neutral magistrate, contained probable cause, and adequately described the premises and evidence sought, the defendant's motion to suppress should be denied.

### A)  The search warrant affidavit contained a substantial basis for probable cause.

The sworn to facts in the affidavit provided the magistrate with a substantial basis to find probable cause for a warrant to be issued.   Whether a substantial basis for probable cause exists in an affidavit turns on the totality of the circumstances.   *See Gates*, 462 U.S. at 238.   The

supporting facts in a search warrant affidavit may be based on hearsay rather than the firsthand knowledge of the affiant. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (citing *Jones*, 362 U.S. at 269–70). "When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the "totality of the circumstances" presents a "substantial basis" for conducting a search for that evidence." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986).

In the instant case, Takeitha Thomas was named in the affidavit.   In addition, the affidavit stated she was the victim of domestic assault at the hands of the defendant and was residing with the defendant at the apartment that was the target of the warrant.   Thomas was not a stranger to the defendant.   Hence, the warrant laid out why she would have intimate knowledge about what evidence could be found in the apartment and how she could potentially have knowledge about his criminal activities.   Furthermore, Thomas claimed to have seen the defendant's assault style rifle in his apartment just days prior.   The affidavit explained that it was illegal for the defendant to possess a firearm because he was a felon and on eight years of probation for aggravated assault. As such, the warrant contained a substantial basis for a probable cause under the totality of the circumstances because the affidavit identified Thomas by name, stated she saw the firearm in the immediate past, and explained the firearm was specifically seen in the defendant's apartment. *See Pelham*, 801 F.2d at 878.

The information in the warrant provided by Thomas did not need more corroboration to provide probable cause.   "[A] known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past." *United States v. Kinison*,

710 F.3d 678, 682 (6th Cir. 2013).   "[N]amed informants, unlike confidential informants, require little corroboration."   *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) (citing *United States v. Miller*, 314 F.3d 265, 270-71 (6th Cir.2002)).   This is because "the legal consequences of lying to law enforcement officials tend to ensure reliability."   *United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2013) (citing *Miller*, 314 F.3d at 269–70).

In *Hodge*, a named informant in the affidavit told police that Lonnie Hodge was producing methamphetamine and had a pipe bomb and AK-47 firearm in his residence.   *Hodge*, 714 F.3d at 381–82.   Police corroborated the informant's information through an independent investigation.   *Id.* at 382.   Authorities subsequently obtained a search warrant to find weapons and evidence of a methamphetamine lab, but the supporting affidavit made no mention of a pipe bomb.   *Id.*   Once executed, police found prescription drugs, marijuana, drug paraphernalia, a pipe bomb, and a Marlin .22 caliber rifle.   *Id.* at 383.   No evidence of a lab or an AK-47 were recovered.   *Id.*   Prior to pleading guilty, the defendant filed a motion to suppress the evidence in the district court and was denied.   *Id.* at 381.   He appealed the decision to the Sixth Circuit which affirmed the lower court.   *Id.*

In reaching its decision, the Sixth Circuit noted that an affidavit need not address the reliability of a named informant or have independent corroboration from law enforcement to provide probable cause.   *Id.* at 385.   Nonetheless, the officers in *Hodge* researched more information to confirm what the named informant told police.   *Id.*   Those corroborating facts were then included in the affidavit.   *Id.*   Finally, despite not finding evidence of a lab or an AK-47, the Sixth Circuit still upheld the validity of the warrant.   *See id.* at 381–83.

Like the named informant in *Hodge*, Thomas was identified as a source of information in

the supporting affidavit of the warrant.  She told police on scene that the defendant was on probation.  This information was confirmed by law enforcement and included in the affidavit, specifically naming the charges for which the defendant was on probation and the court overseeing his probation. The affiant's reliance on the information provided by Thomas supplied probable cause to issue the warrant.

**B)  The information relied upon was not stale.**

Thomas' information that she saw the assault style rifle in the defendant's apartment was not stale.   A search warrant cannot rely on stale information to establish probable cause.   *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010).   Whether information is stale depends on "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)."   *Id.* (quoting *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir.2003).

The first factor favors a finding of validity because of the ongoing nature of a crime such as being a felon in possession of a firearm. "[t]he element of possession and the fact that a weapon has continuing value suggests these crimes are more like "regenerating conspiracies" than "chance encounters."   *United States v. Goodwin*, 552 F. App'x 541, 545 (6th Cir. 2014). The second factor favors the validity of the warrant because the defendant was residing at the apartment where the gun was seen. *See id*, (holding that the defendant was an "entrenched" criminal because the ongoing possession of a firearm likely occurs at a defendant's residence). The third factor favors

8

the validity of the warrant as well because "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time." *United States v. Pritchett*, 40 F. App'x 901, 906 (6th Cir. 2002) (unpublished opinion); *see also United States v. Vanderweele*, 545 F. App'x 465, 469–70 (6th Cir. 2013) (unpublished opinion) (holding that a search warrant was not stale when it was based on a witness seeing the defendant with a silencer up to seven months prior); *United States v. Lancaster*, 145 Fed.Appx. 508, 513 (6th Cir.2005) (unpublished opinion) (holding the fact the defendant was seen firing a machine gun two years prior was not stale information for a search warrant).   Finally, the last factor weighs in favor of the legitimacy of the warrant because a home "is more like a secure operational base than a mere forum of convenience." *Powell*, 603 F. App'x at 478 (citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir.2001)). Hence, Thomas' information that the gun was seen a week prior to the execution of the warrant established probable cause and was not stale.

### C)  A *Franks* hearing is not warranted under the circumstances.

In *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978*)*, the Supreme Court established the procedure for defendants to argue that search warrant affidavits contain misrepresentations that undermine the finding of probable cause.

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same

extent as if probable cause was lacking on the face of the affidavit…

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 155-56, 171-172. In other words, the alleged false statement must have been necessary to the finding of probable cause, and if probable cause exists without the alleged false statement, then no hearing is required. *United States v. Hampton,* 760 F. App'x 399, 404 (6th Cir. 2019).

The defendant claims that police fabricated information that was in the search warrant affidavit.   Specifically, he points to the fact that there the body camera videos did not have footage of Thomas describing the gun's color or alleging that the defendant had drugs in the apartment. This is a conclusory allegation that disregards the possibility that Thomas may have furnished law enforcement officers with information off camera. The defendant also alleges that Detective Cockman lied in the affidavit when he wrote "Moore has a history of selling narcotics according to his arrest history and the victim."   (Ex. 1, at 2). This, too, is conclusory because the statement relies, in part, on information provided by Thomas, which could have been furnished off camera.

Even if the Court did find that the facts of this case were sufficient to trigger a review under

10

Franks, the removal of the reference to those items is far from fatal to the probable cause in the search warrant. If, after hearing the testimony of officers, the Court finds that these particular statements are false or reckless, then they should be removed from the warrant. If the warrant is read without those statements, it still provides a "substantial basis" for probable cause because of the firearm allegation. *Gates*, 462 U.S. at 238. The warrant laid out that the defendant was a felon, and he kept a gun in his home according to a co-resident. That alone provided the magistrate with probable cause to issue a warrant for the firearm. If an affidavit still contains probable cause once the false or reckless statements are removed, then the warrant will not be voided, and the fruits of the search will not be suppressed. *Franks*, 438 U.S. at 156. Therefore, the defendant's motion to suppress should be denied.

**D) Even if the warrant was invalid, the ammunition should not be suppressed because of the good faith exception to the exclusionary rule.**

Under the good faith exception, evidence should not be suppressed if it was obtained because police reasonably relied "on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). However, the Supreme Court has also ruled that the exception does not apply in situations where an executing "officer [has] no reasonable grounds for believing that the warrant was properly issued." *Id.* at 923. This includes when the officer relies "on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (POWELL, J., concurring in part)). This is referred to as a bare-bones affidavit. *See Leon*, 468 U.S. at 915.

11

"[A] bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)).  "It provides nothing more than a mere 'guess that contraband or evidence of a crime would be found . . . either 'completely devoid' of facts to support the affiant's judgment that probable cause exists . . . or 'so vague as to be conclusory or meaningless.'" *White*, 874 F.3d at 496 (internal citations omitted).  "In contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" *Id.* at 496–97 (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004)).  A minimally sufficient nexus exists where there is "some modicum of evidence, however slight . . . between the criminal activity at issue and the place to be searched." *White*, 874 F.3d at 497 (quoting *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005).

The affidavit lists specific sources of information that led the affiant to believe there were weapons and drugs in the apartment.  The alleged illegal conduct was said to have taken place at the defendant's residence.  The Sixth Circuit has held nexuses exist between the illegal conduct and places to be searched when far less information was present in a warrant.  *See United States v. Van Shutters*, 163 F.3d 331, 336–38 (6th Cir. 1998) (holding an affidavit was not bare bones despite not giving a reason "why the affiant believed [the defendant] himself had any connection with the" place to be searched); *Carpenter*, 360 F.3d at 593, 596 (holding an affidavit was not bare bones when the only stated connection between the home searched and narcotics was that "there [was] a road connecting the" residence to the nearby marijuana plants); *United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir. 1994) (holding an affidavit was reasonably relied upon in the

search of a safety deposit box even though the document only stated that "based on his training and experience, [the affiant] believe[d] . . .  it [was] not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes").   Therefore, the affidavit in the instant case was not bare bones and the good faith exception to the exclusionary rule would apply even if the warrant was "subsequently invalidated."   *Leon*, 468 U.S. at 922.

## <u>CONCLUSION</u>

For the aforementioned reasons, the United States respectfully submits that the Defendant's Motion to Suppress should be denied.

Respectfully submitted,

JOSEPH C. MURPHY
United States Attorney

/s/ *Regina M. Thompson*
REGINA M. THOMPSON
Assistant U.S. Attorney
167 N. Main, Suite 800
Memphis, Tennessee 38103
Telephone: (901) 544-4231

13

<u>CERTIFICATE OF SERVICE</u>

I, Regina M. Thompson, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system.

This date: April 5, 2022

s/ *Regina M. Thompson*
REGINA M. THOMPSON
Assistant United States Attorney
167 N. Main, Suite 800
Memphis, Tennessee 38103
Telephone: (901) 544-4231

14

# EXHIBIT 1

## AFFIDAVIT for Search Warrant For:

| Firearms; |
| Cocaine; |
| Marijuana; |
| Currency |

**STATE OF TENNESSEE, SHELBY COUNTY**

Personally appeared before me, Det. B. Cockman IBM 12733 _____ and made oath that he/she has good ground and belief, and does

believe that David Moore- Dob: ▓▓▓▓ _____ is/are in possession of the following described property, to wit::

| Firearms; |
| Cocaine; |
| Marijuana; |
| Currency |

contrary to the laws of the state of Tennessee, upon the following described premises, to wit:

An address more commonly known as 534 Lucy Apt #6

The same being located in Memphis, Shelby County, Tennessee and his/her reasons for such belief are that affiant

has *SEE ATTACHED*. He/She therefore asks that a warrant be issued to search the person(s)

and premises of the David Moore- Dob: ▓▓▓▓ _____ as above described in said County

where he/she believes said

| Firearms; |
| Cocaine; |
| Marijuana; |
| Currency |

is/are now possessed, contrary to the Laws of Tennessee.

**Affiant Signature**

Sworn to and subscribed before me this _4th_ day of _February_ , 2021

Judge / Judicial Commissioner / Magistrate
**General Sessions Criminal Court of Shelby County, TN**

## SEARCH WARRANT FOR:

| Firearms; |
| Cocaine; |
| Marijuana; |
| Currency |

**STATE OF TENNESSEE, SHELBY COUNTY**

### TO THE SHERIFF, ANY CONSTABLE OR ANY PEACE OFFICER OF SAID COUNTY:

Proof by affidavit having been made before me by Det. B. Cockman IBM 12733 _____ that there is probable cause for

believing that the Laws of the State of Tennessee have been and are being violated by David Moore- Dob: ▓▓▓▓

having in his/her possession:

| Firearms; |
| Cocaine; |
| Marijuana; |
| Currency |

contrary to the Laws of the State of Tennessee, upon the following described property, to wit:

An address more commonly known as 534 Lucy Apt #6

The same being located in Memphis, Shelby County, Tennessee being the premises occupied

by David Moore- Dob: ▓▓▓▓ _____ situated in Shelby County, Tennessee; you are therefore comanded

to make immediate search of the person and premises herein above described for the following property:

| Firearms; |
| Cocaine; |
| Marijuana; |
| Currency |

This 4th day of February , 2021

Judge / Judicial Commissioner / Magistrate
**General Sessions Criminal Court of Shelby County, TN**

Issued _4th_ day of _February_ , 2021    Time: _3:05_ PM    To: Det. B. Cockman IBM 12733 _____ , Officer

## Continuation of Affidavit for Search Warrant

### 534 Lucy Apt #6

Firearms;
Cocaine;
Marijuana;
Currency

On 02/04/2021 David Moore was arrested for Domestic Assault and transported to 201 Poplar R&I # 2102001432ME. David Moore has 5 prior felonies and is currently on eight years of probation out of Criminal Court Div 7 Judge Coffee for Aggravated Assault, Convicted Felon in Poss Firearm and Theft of Property. Victim [redacted] Thomas who was residing with David Moore at 534 Lucy Apt #6 stated. Mr. Moore owns and was seen in possession of a black and green (Copper) assault style rifle. Victim Thomas advised it was last seen a week ago in the bedroom closet of 534 Lucy #6. Victim Thomas also states she has seen David Moore store cocaine in bedroom dresser drawers of 534 Lucky Apt #6. Moore has a history of selling illegal narcotics according to his arrest history and the victim.Therefore, with the aforementioned facts in mind, I ask that a search warrant be issued to search 534 Lucy #6 for Firearms, Cocaine, Marijuana, and Currency; to aid in the investigation of Mr. Moore.

Based on this information, the affiant respectively requests a search warrant to be issued for:

534 Lucy Apt #6

_____
**Affiant Signature**

Sworn to and subscribed before me this  4th  day of   February  , 2021

_____
**Judge / Judicial Commissioner / Magistrate**
**General Sessions Criminal Court of Shelby County, TN**

No. _____

## Search Warrant

Issued *February 4*, *2021*

Came to Hand *February 4*, *2021*

Executing by making diligent search for said within described property and finding,

*12 - 7.62 × 39 rounds*

*1 black digital scale*

Which is here returned in Court, and I having arrested

_____ Booking # _____

and bringing _____ before

_____

that he/she may be tried according to law.

This ____ day of _____, ____

---

## OFFICER'S RETURN

The within warrant came to hand, and executed on this *4* day of *February*, *2021* by searching the person(s) and property herein described, and taking therefrom and bringing before the following:

_____

_____ *12753*
(Officer)

## JUDGEMENT ON SEARCH WARRANT

Due and proper return having been made of the search warrant, the property seized as described in the said return shall be retained, subject to the orders of the Criminal Courts of Shelby County; and the within warrant, affidavit, and return shall be filed in the office of the Clerk of said Court.

This ____ day of _____, ____

_____

Judge, Div. ____ of _____ Court
Shelby County, Tennessee