IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| v. ) | No. 21-cr-20219-SHL |
| DAVID MOORE, ) | |
|     Defendants. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant David Moore's Motion to Suppress. (ECF No. 20.) Moore seeks to suppress the ammunition discovered during a search of his apartment by Memphis Police Department ("MPD") Officers. The search was conducted pursuant to a search warrant issued after an alleged domestic violence victim stated to police that he had a gun in the apartment.

In his Motion, Moore contends that the search warrant was not supported by probable cause, as constitutionally required, because (1) it relied on statements made by an unreliable informant and (2) contained information that was stale and thus ineligible for consideration. In response, the Government asserts that the victim was reliable because, at the time, she was staying in Moore's apartment where the firearm was allegedly stored and is named in the search warrant's affidavit as the informant providing this information. (ECF No. 26.) Moreover, according to the Government, the information is not stale because, among other things, guns are not likely to move. Based on the submissions of the Parties and the evidence offered at the April 20, 2022 hearing on the Motion, the Court agrees with the Government and finds that the search

warrant's affidavit provided a substantial basis for the magistrate judge issuing the search warrant to determine that probable cause existed.  Therefore, Defendant's Motion is **DENIED**.

## BACKGROUND

On February 4, 2021, around 1:30 A.M., Memphis Police Department ("MPD") Officers Matthew Girouard and Keeley Greer[1] arrived at the corner of South Lauderdale Street and East McLemore Avenue in Memphis in response to a domestic violence call placed by Takeitha Thomas.  (ECF No. 20.)  Thomas alleged that, Defendant David Moore, head butted her at his apartment located at 534 Lucy Avenue.  (Id. at PageID 34.)  The Officers observed that Thomas had a laceration on her nose, which indicated to them that she had indeed been assaulted.  (ECF No. 26 at PageID 67.)  Thomas told the Officers that she fled the apartment, hoping that Moore would also leave so that she could return to retrieve her 8-year-old daughter, who was still there sleeping, and their belongings.  (Exhibit 2, Girouard Body Camera Footage ("Girouard Footage").)  Thomas stated that she had lived with Moore since his recent release from jail but also has a separate Texas residence.  (Id.)

Before the Officers transported Thomas to Moore's apartment, she informed them that Moore was currently on probation and that he had taken her car "three or four days ago." (Girouard Footage.)  The Officers reviewed his arrest history and found that he had been arrested at least twice within the last two years and had a history of resisting.  (Exhibit 2, Girouard Body Camera Footage ("Girouard Footage").)  When the Officers asked Thomas whether guns were in the home, she stated that Moore had a firearm that she described as a "chopper."  (ECF No. 20 at

---

[1] Both Officers Girouard and Greer were wearing body camera footage that captured this incident and were admitted into evidence at the hearing on the Motion.  (ECF No. 86.)  The Court specifically relies on evidence from Officer Girouard's body camera footage, which was admitted as "Exhibit 2."  Id.

2

PageID 34.) Although Thomas did not know if the alleged firearm was still in Moore's home, she stated that she had last seen it in the apartment about five days prior.[2] (Girouard Footage.) The Officers then called for backup and proceeded to Moore's apartment once Officers Anthony Henderson and Ryan Drew arrived on the scene. (ECF No. 26 at PageID 67.)

When the Officers reached Moore's apartment, they knocked on the door repeatedly, but no one answered. (ECF No. 20 at PageID 34.) Meanwhile, the Officers noticed a white car that had driven by twice and then parked down the street from Moore's apartment complex. (Id.) Thomas indicated that Moore may be a passenger in the car. When the Officers approached the car to investigate, they discovered Moore, arrested him and removed keys from his person. (Id.) Thomas identified which key opened the apartment door, and Officers Girouard and Drew escorted her inside. (Id.)

As Thomas collected her belongings, she entered the master bedroom's closet, where she had said Moore stored the firearm, to get her shoes but made no mention as to whether it was there. (Girouard Footage.) Body camera footage also shows Thomas pulling clothing from dresser drawers and removing a large hamper basket from the master bedroom that was filled with her belongings. Additionally, Thomas's daughter is seen sleeping in what appears to be her own bedroom and removes a suitcase from this space. The Officers remained in the apartment as she collected her things and did not observe evidence of any criminal activity. (Girouard Footage.)

---

[2] During the hearing, the Government did not play the portion of the body camera footage where Thomas stated that she saw the gun in the bedroom closet. However, both Parties agree that she made such a statement. Because the issue does not appear to be contested, the Court assumes Thomas did, in fact, identify the gun as having been present at this location. However, the Government is cautioned to highlight such evidence for the Court in the future, and not rely on the Court to search a two-hour video for it.

Afterward, the Officers transported Thomas and her daughter to a shelter and Moore to jail. Officer Greer prepared an Incident Report, detailing the events that had transpired. Officer Greer included in his report that Thomas reported that Moore had "a lot of drugs" in his apartment yet there is no footage of Thomas stating this. (ECF No. 20-1 at PageID 50; Girouard Footage.)

That afternoon, around 3:05 P.M., Detective Cockman applied for a search warrant to search Moore's apartment for firearms, illicit drugs and currency. (ECF No. 20 at PageID 34.) Cockman was not present during the earlier incident. (ECF No. 30.) However, in the warrant's affidavit, Cockman swore that Thomas stated that Moore possessed a "black and green" assault style rifle and that she had seen that rifle "a week ago" in his bedroom closet. (ECF No. 20-1 at PageID 52.) The affidavit also stated that Thomas reported seeing Moore store cocaine in his bedroom dresser drawer, and that Moore had a history of selling illegal narcotics "according to his arrest history and the victim." (Id.) Based on these statements, the magistrate judge found that there was probable cause to issue the warrant. (Id.)

Cockman testified at the hearing, however, that he does not know how he received the information contained in the affidavit. (ECF No. 30.) Although he said his normal practice was to gather information, either himself or through other officers on his team, he does not recall speaking with Thomas or any of the Officers who responded to her domestic violence call, and he has no records of any conversations. He asked his teammates whether they spoke to Thomas, and no one remembers doing so. Cockman also testified that he does not recall reviewing the Incident Report that detailed the events of this incident, and did not recall corroborating the statements Thomas allegedly provided. (Id.) Lastly, Cockman testified that he did not review the body camera footage. (Id.) Nevertheless, MPD Officers executed the search warrant and

4

discovered a scale atop Moore's television and ammunition in his dresser drawer. (ECF No. 20 at PageID 35.) He was later indicted for being a felon in possession of ammunition. (ECF No. 1.)

## ANALYSIS

Moore seeks suppression of the ammunition discovered by MPD Officers in his apartment. He contests the veracity of many statements in the affidavit supporting the search warrant, particularly those statements attributed to Thomas but not on the body camera footage. As to what is left after redacting those portions, the crux of his argument is that the search warrant lacked probable cause because its supporting affidavit (1) relied on statements allegedly provided by Thomas, who is an unreliable informant and (2) contained stale information about his alleged criminal activity. Before the Court turns to these two points, it must first address Moore's position that the search warrant's affidavit contains material misrepresentations and omissions. (ECF No. 20 at PageID 41-42.)

Moore argues that the affidavit includes statements that Thomas allegedly made to law enforcement about his criminal activity that are not captured on body camera footage. Specifically, Moore argues that body camera footage does not show Thomas describing the color of Moore's alleged rifle or show her accusing him of possessing or selling any drugs. Moore questions the basis for these statements as the alleged rifle was never discovered and Moore's Pretrial Service Report shows that his only drug related charge was for misdemeanor marijuana possession.

In response, during the suppression hearing, the Government stated that it could not and would not seek to prove the truthfulness of any statements reportedly made by Thomas that are not captured on body camera footage. Further, the Government agreed that any statements contained in the affidavit that are attributed to Thomas, but not captured on camera, should be

5

disregarded in the Court's determination of whether the affidavit provided the magistrate judge with a substantial basis to find probable cause to issue the search warrant.

The Court finds that there is a lingering question as to where Detective Cockman obtained the information detailed in the search warrant's affidavit.  He testified that he does not recall speaking with Thomas or the Officers who responded to her domestic violence call, and does not recall reviewing the Incident Report or body camera footage from that night.  Further, he testified that he does not recall running Moore's criminal background.  Although he testified that it was his practice to always corroborate and confirm any information he includes in a search warrant, the Government did not present any evidence to establish such a policy or practice within the department.

The Court does not take lightly Cockman's inability to recollect where he obtained incriminating evidence to support his affidavit and lack of documentation, and is disappointed to learn of this lack of proof to substantiate sworn statements presented to the magistrate judge. However, given the Government's position as to how the affidavit should be read, and Moore's acquiescence with this approach, the Court need not reach a decision on any issues related to those portions of the affidavit to be ignored.  The Court then reads the affidavit as stating, in pertinent part, that Thomas reported to Officers that Moore "owns and was seen in possession of . . .[an] assault style rifle" that was "last seen a week ago in [his] bedroom closet."  Below, the Court considers whether these statements are sufficient to provide the magistrate judge with a substantial basis to find probable cause.

Moore argues that Thomas's statements cannot support a finding of probable cause.  The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or

things to be seized." U.S. Const. amend. IV.  Courts have interpreted this provision to require that a valid search warrant (1) be issued by a neutral and detached magistrate judge, (2) be supported by probable cause and (3) describe with particularity the thing to be seized and the place to be searched.  Dalia v. United States, 441 U.S. 238, 255 (1979).

Probable cause exists if there are reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.  United States. v. Bennett, 905 F. 2d, 931, 934 (6th Cir. 1990).  The facts contained within the search warrant's affidavit need only show a "probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Smith, 182 F. 3d 473, 477 (6th Cir. 1999).  If these facts come from an informant, then the magistrate judge should determine whether, "given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  "[A]lthough 'veracity,' 'reliability,' and 'basis of knowledge' are highly relevant in assessing the value of an informant's tip," these factors are not "rigidly exacted in every case." Smith, 182 F. 3d at 477. A magistrate judge's decision is given great deference and will be upheld if the reviewing court finds that "the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (internal quotations omitted).

Moore contends that Thomas's statements cannot establish a substantial basis to find probable cause because (1) she is an unreliable informant and (2) the information she provided was "stale."  (ECF No. 20 at PageID 40.)  In response, the Government argues that Thomas's statements provided the magistrate judge with a substantial basis to find probable cause because

7

Thomas was named in the affidavit as the source of the information and witnessed Moore's alleged criminal activity while residing in his home, which reportedly occurred only days before the search warrant's execution. Additionally, the Government argues that, even if the Court finds that the affidavit was defective, the evidence of ammunition discovered in Moore's apartment should not be suppressed because of the good-faith exception.

## I. Reliability

Moore first argues that Thomas's statements are unreliable because she is not a known police informant with a history of cooperating with police, and the affidavit failed to establish any basis for why her statements should be taken as true. According to Moore, given law enforcement's unfamiliarity with Thomas and the fact that neither Thomas nor the Officers found any evidence of criminal activity when they escorted her through his apartment, corroborating evidence was required to substantiate her allegations. Moore further challenges Thomas's reliability, arguing that her domestic violence allegations gave her an ulterior motive to incriminate him so that he would be arrested. Lastly, Moore seemed to suggest during the suppression hearing that Thomas could not have any knowledge of whether he owned and stored a firearm in his bedroom closet because she did not actually reside in his home, but instead had a permanent residence in Texas.

In response, the Government asserts that, not only did Thomas reside in Moore's apartment at the time of this incident, she also was his intimate partner and therefore would reasonably know that he stored a firearm in his home. Additionally, the Government argues that it need not corroborate Thomas's statements because the affidavit identifies her as the source of its hearsay information, relying on United States v. Hodges, 714 F.3d 380, 385 (6th Cir. 2013).

In Hodges, the defendant challenged the denial of his motion to suppress evidence of a "pipe bomb" officers found during the search of his home, asserting that the search warrant was

8

not supported by probable cause. Id. at 384. The search warrant had been issued after the defendant's next-door neighbor informed local authorities that he witnessed the defendant manufacture methamphetamine in his home and that the defendant had several firearms as well as a pipe bomb located there. Id. at 382. Local authorities relayed this tip to a detective who investigated the matter, and applied for and received a warrant to search the defendant's home. Id. Although the court found that the Government had ample evidence to support the search warrant, given corroboration uncovered during the investigation, it also noted that had the search warrant been issued based on the neighbor's statements alone, it would have likely been sufficient because the neighbor had been named in the warrant as the person supplying the information. Id. at 384-85. The court reasoned that a magistrate judge may rely on the statements of a named informant because the "legal consequences of lying to law enforcement officials tend to ensure reliability." Id. at 385.

    Here, Thomas is a reliable informant, and there is reason to believe that she would have knowledge of whether Moore possessed a firearm. While an informant's reputation is important when considering whether the information she provides is enough to establish probable cause, Allen, 211 F. 3d at 976, "a known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past." United States v. Kinison, 710 F. 3d 678, 682 (6th Cir. 2013). Because known informants subject themselves to the risk of prosecution should they provide false information, that risk is generally enough to ensure the reliability of their statements. Hodges, 714 F. 3d at 384-385. Thus, named informants "require little corroboration," United States v. Williams, 544 F.3d 638, 690 (6th Cir. 2008), and, given the totality of the circumstances, the Court finds that this is especially true here.

Not only does the affidavit identify Thomas as the source of its hearsay information, but also states that she resided with Moore at the location where the alleged criminal activity occurred and had done so for some time despite still having a permanent address in Texas. See Smith, 182 F. 3d at 477 ("An affidavit must "contain a statement about some of the underlying circumstances indicating the informant [is] credible or that [her] information [is] reliable."). Indeed, body camera footage played during the suppression hearing shows Thomas telling Officers that she lives with Moore and has done so since his release from jail and shows her and her daughter retrieving enough personal belongings from his apartment to fill a suitcase and large hamper basket. (Girouard Footage.) Thus, the Court is not convinced by Moore's suggestion that Thomas was simply "visiting." (ECF No. 20 at PageID 34.) Moreover, because there is no dispute that Thomas is Moore's intimate partner, the Court finds that the "basis of knowledge" element weighs heavily in the Government's favor because it is reasonable to believe that, given the nature of their relationship and co-occupancy, she would witness any criminal activity that occurred inside the home.

Finally, the Court finds that Moore's suggestion that Thomas's reliability should be questioned because their alleged physical altercation gave her a motive to incriminate him lacks merit. To begin, the Court rejects any notion that domestic violence victims would necessarily harbor motives or intentions to provide law enforcement with false information about their abusers. Additionally, the evidence shows that Thomas told the Officers that Moore possessed a firearm only after they questioned her specifically about the issue and that the Officers inquired for officer safety. (Girouard Footage.) Because the evidence suggests that the conversations about Moore's alleged firearm were held to gauge the safety of the situation, there is no reason to

believe that Thomas was attempting to "get [him] into even more trouble" as he contends. (ECF No. 20 at PageID 40.)

Thus, the totality of the circumstances support Thomas's reliability.

## II. Staleness

Moore also argues that the information Thomas provided was "stale," and thus cannot establish probable cause, because her allegations refer to events that occurred approximately five days before the search warrant was executed. The Government, on the other hand, argues that this information is not "stale" and could support a belief that Moore possessed a firearm at the time the search warrant was executed because Thomas was residing in the apartment where the gun was allegedly seen, Moore's prior convictions reasonably suggest that he would engage in ongoing criminal activity and firearms are the kind of "durable goods" that would be "expected" to be found in a criminal's possession. (ECF No. 26 at PageID 74.)

Stale information "cannot be used in a probable cause determination." United States v. Perry, 864 F. 3d 412, 414 (6th Cir. 2017). When considering the length of time between the events listed in the affidavit and the execution of the warrant, the court should consider several factors, including: (1) the character of the crime, (2) the incriminated person and whether that person is "entrenched or nomadic," (3) the thing to be seized and (4) the place to be searched. Brooks, 594 U.S. F. 3d at 493. "In the context of drug crimes, information goes stale very quicky because drugs are usually sold and consumed in a prompt fashion." Id. (internal quotations omitted). The Government argues that each of these factors weighs in favor of the information's currency. The Court agrees.

To begin, there is little question that the second and fourth factors weigh in favor of finding that the information Thomas provided was not stale. The affidavit supports the

11

conclusion that Moore was an "entrenched" criminal because it alleged that he was engaged in illegal activity (possession of the gun) in one specific location: his apartment. See United States v. Goodwin, 552 Fed. Appx. 541, 543-45 (6th Cir. 2014) (unpublished opinion). When the incriminated person does not move "frequently with the hope of avoiding detection," the probability that evidence of his criminal activity will be found increases. Id. Moreover, courts have found that a defendant's home is a "secure operational base" where criminal activity may generally occur. United States v. Frechette, 583 F. 3d 374, 379 (6th Cir. 2009).

The first and third factors also weigh in favor of a lack of staleness. The character of a crime considers the continuous nature of the act. When "an affidavit "recites activity indicating protracted or continuous conduct, time is of less significance." United States v. Henson, 848 F.2d 1374, 1382 (6th Cir. 1988). Illegal firearm possession is not a one-time occurrence but rather an ongoing offense because possession "is a course of conduct, not act." Goodwin, 552 Fed. Appx. at 543-45. Because the affidavit states that Moore "owns and was seen in possession . . .of a[n]. . .assault style rifle," only one week before its issuance, there is probable cause that Moore would still be possession of that rifle at the time of the search.

Likewise, firearms are the type of "durable" contraband that are expected to be stored at an individual's home for long periods of time and not quickly deposed. United States v. Vanderweele, 545 F. Appx. 465, 469-70 (6th Cir. 2013) (unpublished opinion) (finding that the informant's tip that defendant possessed a gun silencer up to seven months before the search because silencers, like firearms, are "more commonly kept by [their] owner[s]."); United States v. Pritchett, 40 Fed. Appx. 901, 906 (6th Cir. 2002) (unpublished opinion) (finding that an affidavit that contained factual allegations about an alleged firearm that had been seen more than four months earlier was not stale). Thus, it is reasonable to believe that, if Moore possessed a

gun in his home one week prior, then the gun would still be located in his apartment even if Thomas did not mention seeing it in Moore's closet when she was retrieving her belongings. The Court does not find that the information Thomas provided was stale.

## CONCLUSION

Considering the totality of the circumstances, the Court finds Thomas was a reliable informant who supplied law enforcement with viable information related to Moore's alleged criminal activity. Thus, the magistrate judge had a substantial basis to find that probable cause existed and properly issued the search warrant. As such, the search of Moore's apartment was constitutional, and the ammunition found will not be suppressed. Thus, the Court **DENIES** Moore's Motion.

**IT IS SO ORDERED**, this 25th day of April, 2022.

                                                s/ Sheryl H. Lipman
                                                SHERYL H. LIPMAN
                                                UNITED STATES DISTRICT JUDGE